Gregory D. **FIELDER,** Petitioner,

v.

Patricia A. **THORN (Fielder),**
**Respondent.**

Family Court of Delaware,
New Castle County.

Submitted: Oct. 29, 1986.
Decided: Feb. 18, 1987.

---

Edwin A. Tos, III, Wilmington, for petitioner.

Christine K. Demsey, Wilmington, for respondent.

WAKEFIELD, Judge.

On June 6, 1986, petitioner (herein sometimes "father") filed an affidavit requesting an emergency hearing on a Rule to Show Cause-Contempt against respondent (herein sometimes "mother") alleging failure by the mother to comply with the terms of a Separation Agreement and Order of this Court dated December 19, 1984 regarding custody and visitation. On June 16, 1986, this Court denied the father's ex parte emergency application wherein he requested an immediate order granting him visitation with the child for six weeks during the summer. In so doing, the presiding judge stated that, whether or not it ultimately enters a visitation order, "this Court has no way of enforcing an order in California unless Petitioner takes the order to California" (where the mother and child currently reside). The emergency judge also gratuitously suggested that, as a practical matter, the father would be well advised to begin the action in California.

A hearing was then scheduled for August 12, 1986 on the contempt matter but was cancelled after the mother filed a Motion to Dismiss asserting lack of jurisdiction on August 5, 1986. Petitioner filed a response to the Motion on September 18, 1986 and informed the Court that a memorandum would be filed forthwith. The Court has now received memoranda from counsel with respect to the Motion to Dismiss and this is the Court's decision thereon.[1]

---

1. The Court will treat the Motion as one for Summary Judgment since some minor factual issues exist.

The parties were married on August 27, 1976 in California and moved to Delaware in August of 1978 where they lived until their separation on or about February 10, 1984. In June of 1984, the mother moved to Texas with the parties' minor child, apparently without objection by the father who remained in Delaware and who filed for divorce in Delaware on August 24, 1984. The final divorce decree was entered by this Court on October 15, 1984. The parties thereafter entered into a Stipulation and this Court entered an Order thereon regarding all ancillary matters, including custody and visitation. This stipulated Order dated December 19, 1984 provided in pertinent part:

> The Wife shall have sole custody of the parties' minor child ... and shall keep Husband informed as to all major decisions affecting the said child's health, education and welfare. The Husband shall have liberal visitation privileges. Neither party shall alienate the affections of the minor child toward the other party.

Subsequently, respondent and the minor child moved from Texas, where they lived when the foregoing Order was signed, to California where the mother later remarried. Although petitioner claims that he has attempted to schedule visitation with the child on at least two occasions, no such visitation has occurred for reasons which are not spelled out. Further, since the mother and child's departure from Delaware prior to divorce and prior to any court order, neither of them has had any contact with the State of Delaware except for the mother's participation in the settlement of ancillary proceedings resulting in this Court's Order of December 19, 1984.

The issue is whether this Court has continuing jurisdiction to enforce its Order for custody/visitation even though neither the child nor her mother have had any contact with the State of Delaware since the entry of the custody/visitation Order one and one-half years prior to the commencement of this action and, if so, whether this Court should exercise that jurisdiction. Although the petition is couched in terms of a contempt action, it seems clear that any court assuming jurisdiction over the case will necessarily have to interpret and further implement the existing Order since it is not at all specific on the issue of visitation. The case is more in the nature of a suit for specific performance and/or clarification rather than one for contempt of court.

The Uniform Child Custody Jurisdiction Act (herein "U.C.C.J.A.") which has been adopted by Delaware at 13 *Del.C.* § 1903 governs this Court's jurisdiction in interstate child custody matters and, in effect, enumerates the "minimum" contacts necessary pursuant to *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. It provides:

> A Court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
>
> (1) This State:
>
> a. Is the home state of the child at the time of the commencement of the proceeding; or
>
> b. Had been the child's home state within 6 months before commencement of the proceedings and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or
>
> (2) It is in the best interests of the child that a court of this State assume jurisdiction because:
>
> a. The child and his parents, or the child and at least 1 contestant, have a significant connection with this State; and
>
> b. There is available in this State substantial evidence concerning the child's present or future care, protection, training and personal relationships; or
>
> (3) The child is physically present in this State and:
>
> a. The child has been abandoned; and

b. It is necessary in an emergency to protect the child because he has been subjected or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivisions (1), (2) and (3) of this section, or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and it is in the best interests of the child that this court assume jurisdiction

Except as otherwise specifically stated in this section, the physical presence in this State of the child, or of the child and 1 of the contestants, is not alone sufficient to confer jurisdiction on a court of this State to make a child custody determination. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody. (60 Del.Laws, c. 368, § 1)

There is no question that California, not Delaware, is now the child's "home state." [2] The child has not resided in Delaware for well over two years. Furthermore, in his memorandum, the father admits that mother and child have lived in California for over a year, and that California has therefore become the child's "home state" under § 1903(1).

With reference to § 1903(2), it can hardly be argued that it would be in the best interests of the child for Delaware to assume jurisdiction under the facts of this case. As stated, the child has not had *any* connection with this state for well over two years, let alone a *significant* connection, and there could be little or no evidence available in Delaware "concerning relationships" since the child has not even visited her father in Delaware during this time.

In *Grayson v. Grayson*, Del.Fam., 454 A.2d 1297 (1982), this Court stated that "the interest of the child is best served when the Court has optimum access to relevant evidence about the child and the family. There must be maximum rather than minimum contact with the state." In that case, mother and child had moved to Delaware ten days prior to instituting the suit. The Court held that even where a child had some minimum contact with Delaware (where grandparents resided and where some of the child's doctors were located) those contacts paled in comparison to the contacts with Maryland (where child and parents all resided prior to the child and mother's departure). The facts of the present case are even more compelling. In this case, the child has resided and continues to reside in California and the only contact with Delaware is the father's continued presence in this state where the original custody order was entered. All of the evidence regarding the child's present and future care, personal relationships, training, etc. is in California. Therefore, this Court does not even have minimal access to relevant evidence, let alone "optimum" access. And it must be remembered that visitation only, not custody itself, is in issue.

Similarly, in *Serna v. Salazar*, N.M. Supr., 98 N.M. 648, 651 P.2d 1292 (1982), subsequent to the parties' California divorce and entry there of a custody decree, the mother and children moved to New Mexico while the father remained domiciled in California. In holding that New Mexico courts should assume jurisdiction over a petition to modify the California decree, the New Mexico Supreme Court stated that this was in the best interests of the children and that it was "obvious" that California no longer had jurisdiction since, inter alia, California was no longer the "home state" of the children and they had no "significant connection" with California.

Under similar factual circumstances, the Maryland Court of Appeals assumed jurisdiction over a custody matter filed by the

---

**2.** § 1902(5) "Home state" shall mean the state in which the child immediately preceding the time involved lived with his parents, a parent or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6–months or other period.

father. The Court rejected the mother's arguments that Rhode Island had continuing jurisdiction because: (a) Rhode Island was the initial decree state which entered the custody order in the first place, (b) the mother resided there, and (c) the children visited their mother there for four weeks at a time. The Court held that such visits alone did not create a "significant connection." *Olson v. Olson*, Md.App., 64 Md. App. 154, 494 A.2d 737 (1985). Again, it is evident that the contacts of the child in the cited case are more significant than those in the case at bar.

■ This Court is well aware of the line of cases which hold that the last marital domicile is sufficient connection for jurisdiction in support matters, *See, Prybolsky v. Prybolsky*, Del.Fam., 430 A.2d 804 (1981), *King v. King*, Del.Fam., 513 A.2d 773 (1985), *Helen B.M. v. Samuel F.D.*, Del.Fam., 479 A.2d 852 (1984), and that continuing jurisdiction exists over subsequent enforcement or modification of decrees *Lewkowitz v. Lewkowitz*, Del.Fam., 513 A.2d 211 (1985). However, in support cases, such as those referred to above, jurisdiction for support really involves only jurisdiction over the parents rather than jurisdiction over the child, whereas the focus of custody/visitation cases is much broader and also involves the child and his or her environment, school, personal relationships and other factors which have a particular situs. The child cannot be held to be forever subject to the jurisdiction of the courts of a particular state merely because the parents lived in that state at some time in the past (even though the parents may have agreed to continuing jurisdiction) when all or most of the child-oriented factors lie elsewhere.

Concerning the concept of continuing jurisdiction over a prior custody determination as this concept has been incorporated into the Parental Kidnapping Prevention Act (herein "P.K.P.A."), 28 U.S.C. § 1738A(c) and (d) state:

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) Such court has jurisdiction under the law of such State; and

(2) One of the following conditions is met:

(A) Such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceedings and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B) (i) It appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) The child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subject to or threatened with mistreatment or abuse;

(D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) The court has continuing jurisdiction pursuant to subsection (d) of this section.

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c) (1) of this section continues to be met *and*

*such State remains the residence* of the child or *of any contestant.* (Emphasis added)

■ Although subsection (c) is substantially similar to § 1903 of the U.C.C.J.A., subsection (d) appears to grant a court broader discretion in assuming jurisdiction merely because one contestant continues to reside in the State which rendered the initial custody decree. However, this section is not in contravention to the U.C.C.J.A., but rather incorporates it therein. It requires that section (c) (1) be satisfied *in addition to* the state being the residence of at least one contestant. The essence of (c) (1) is that, if the Court has jurisdiction under state law, it will also have jurisdiction under P.K.P.A. As previously discussed, 13 *Del.C.* § 1903 grants jurisdiction in interstate custody matters. It is clear from the analysis above that Delaware does not have jurisdiction over this matter under its own laws and, similarly, lacks jurisdiction pursuant to the P.K.P.A. *See, Serna v. Salazar, supra.*

Additionally, in a pre-P.K.P.A. case, *In Re Marriage of Steiner,* Cal.App., 89 Cal. App.3d 363, 152 Cal.Rptr. 612 at 617 (1979), the California Court of Appeal rejected the general continuing jurisdiction provision of its code of civil procedure in favor of the specific provision of the U.C.C.J.A. which was similar to Delaware's. It stated:

First, the argument ignores the significant relationship test basis of acquiring jurisdiction to modify a decree ... Secondly, it ignores the central concept that it is the best interest of the child that governs and not the interest or desires of the wrangling parents ... Thirdly, if either or both of the parents can move away from the court of the state issuing the initial custody decree, thus losing contact with the state where the initial decree was rendered or the child's contact with the state may otherwise become slight ... accordingly, a state should not assume the authority to modify a custody decree solely upon the fact

that it was the state that initially made the custody determination.

The U.C.C.J.A. as adopted by Delaware coupled with the sound reasoning of the *Serna* and *Olson* courts compels this Court to determine that it is without subject matter jurisdiction to hear the merits of this case.

Furthermore, even if this Court were to hold it had continuing jurisdiction to deal with the issue of custody/visitation, the Court would, in all probability, decline to exercise such jurisdiction under the forum non conveniens provisions of the U.C.C.J.A. as set forth in 13 *Del.C.* § 1907. Although the Court does not have a detailed set of facts before it, those facts that are known to the Court, when considered in light of the statutory factors as set forth in § 1907(c), would strongly favor declination of jurisdiction in Delaware in favor of California on the issues here involved.

■ Finally, as to respondent's allegation of defective service, the Court's attention is drawn to old Family Court Rule 110(c)(1) which provides that, when a defendant resides outside the state, notice shall be given by sending a copy of the summons and petition by certified mail to defendant at his last-known address, return receipt requested. In this case, the Court transmitted to the mother a copy of a letter dated July 14, 1986 in which it informed both parties that a hearing had been set for August 12, 1986 at 3:00 p.m. This was served on Mrs. Thorn by certified mail and the return receipt was returned with her signature. However, this issue is rendered moot by this Court's holding that it lacks subject matter jurisdiction over the present action and that the matters should be heard in California.

IT IS SO ORDERED.