*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KENNETH JOHN CHRISTENSEN, | ) | |
| | ) | Supreme Court No. S-17749 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-18-01110CI |
| v. | ) | |
| | ) | O P I N I O N |
| SONGUL SECKIN, | ) | |
| | ) | No. 7530 – May 14, 2021 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Darryl L. Jones, Law Office of Darryl L. Jones, Palmer, for Appellant. Justin Eschbacher, Eschbacher & Eschbacher, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

CARNEY, Justice.

## I.   INTRODUCTION

The superior court denied a father's motion to modify a foreign court's custody determination because it did not believe it had subject matter jurisdiction to modify the order under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). The father appeals, arguing that the superior court erred when it held that it did not have jurisdiction. Because the superior court correctly determined that it lacked jurisdiction to modify the custody order, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

Songul Seckin, who was born in Turkey, and Kenneth Christensen married in August 2012. Soon afterward Seckin returned to Turkey; she was pregnant with their child.

Seckin gave birth to their child in Turkey in January 2013. While Seckin and the child were in Turkey, she and Christensen "reached a mutual divorce agreement."

Christensen traveled to Turkey for the divorce proceedings. Christensen stated in court that Seckin would "overtake the custody" of their child, and agreed to visitation and child support. In an August 2017 order, the Turkish court awarded Seckin custody, noting that "the parties have agreed" on visitation, child support, and her custody of the child.

Seckin and the child returned to Alaska in December 2017.[1] Seckin claims her return was "on a trial basis" and that she agreed to return only after Christensen promised to provide her food, housing, and a job. She also asserts that she made it clear to Christensen that she was only returning because "finances were tight" and she "owed" him "the opportunity to develop a relationship with [their child]." She claims that she told Christensen she did not intend to renew her own relationship with him.

Christensen disputes Seckin's claim that she returned to Alaska on a trial basis. He claims that she "told [him] that she wanted to live in Alaska permanently" and "to work on [their] relationship."

---

[1] The precise date of Seckin and the child's return to Alaska is unclear. Seckin filed child custody jurisdiction affidavits listing December 8 and 16. And Christensen stated in an affidavit that Seckin and the child returned on December 15.

In early January 2018 Seckin moved to register the Turkish divorce decree in Alaska superior court, and filed a number of supporting documents.[2] Christensen did not oppose registration of the Turkish divorce decree. The superior court registered the divorce decree in late January.

In June Seckin and Christensen filed a stipulated motion giving legal custody of their child to Seckin. In the motion they "acknowledge[d]" that Seckin's legal custody was in their child's best interests. The motion recited that each of them had been able to consult with counsel and that they were entering into the "stipulation freely and voluntarily without duress and of sound mind."

Seckin's trial run in Alaska "did not go well." Seckin alleges that Christensen kept her and the child as "financial hostages," had a key to her home and entered at will, and did not pay her for most of her work at his restaurant. According to Seckin, Christensen stated he did not have to pay her "because he was housing us and paying for food." Seckin also claims that she did not receive any child support from Christensen.

Seckin also states that Christensen "had little interest in" their child and rarely spent any time with the child. She alleges that Christensen "used inappropriate corporal punishment"on the child, making the child fear him. Seckin also asserts that Christensen harassed her, making sexual advances "despite [her] repeated refusal." Seckin alleges that when she attempted to stop an advance by pushing Christensen away, she fell and injured her shoulder, which required surgical repair. Christensen denies all of Seckin's allegations.

---

[2]    *See* AS 25.30.430(a) (allowing for registration of child custody determination by court of another state); AS 25.30.380(a) (listing information to be included in first pleading or affidavit in child custody proceeding).

Seckin returned to Turkey with the child on January 28, 2019. Christensen purchased both of them one-way plane tickets. He asserts that he believed that she would receive treatment for her shoulder and return to Alaska once she was cleared to fly.

Once in Turkey, Seckin informed Christensen that she and the child "were staying." Seckin returned to Alaska in March 2019 to retrieve personal property. Despite Christensen's request, she did not bring the child with her. Seckin claims that Christensen "had no issues" with the child, and her, remaining in Turkey. Christensen responds that he "never voluntarily agreed to [Seckin] moving to Turkey or to [the child] being raised there."

## B. Proceedings

On April 1, 2019, Christensen filed a motion to modify the Turkish custody order, seeking interim child custody. Seckin opposed the custody modification.

A standing master held a hearing on the motion in November. In his report afterward, the master questioned whether the court had jurisdiction to modify the Turkish order, noting that "[i]t is not clear that an Alaska court has jurisdiction to modify a custody decree from a foreign country unless certain specific requirements are met," citing AS 25.30.320[3] for those requirements.

Alaska Statute 25.30.320 authorizes an Alaska court to modify a child custody determination made by a court of another state only when the Alaska court has jurisdiction to make an initial custody determination under AS 25.30.300(a)(1), (2), or (3), and: (1) the court of the other state determines that it no longer has exclusive continuing jurisdiction or that the Alaska court would be a more convenient forum, or

---

[3]     Although the standing master referred to "AS 25.30.330," he quoted AS 25.30.320 in the body of the report.

(2) either the Alaska court or other state's court determines that neither the child nor a parent presently resides in the other state.[4] The standing master noted that Alaska law did not specifically address how to treat a foreign country when it considered jurisdiction in child custody matters. The master referred to AS 25.30.810, which requires Alaska courts enforcing custody orders to "treat a foreign country as if it were a state of the United States for the purpose of applying AS 25.30.400–25.30.590."[5]

The master concluded that if AS 25.30.810 applied and required Alaska courts to treat the Turkish court as another state's court, "it appears that this court does not have jurisdiction to modify the Turkish custody order." The master then analyzed Christensen's motion, assuming that the Turkish order was equivalent to one from another state. He first observed that the child was not in Alaska for the six months before the motion was filed: the child "was in Turkey for the past four months" and when the motion was filed, "both [Seckin and the child] were living in Turkey." But because the master had raised the jurisdiction issue sua sponte, he gave the parties an opportunity to submit briefs "directly to the Superior Court for review" before a final order issued. Seckin did not file a brief.

In his brief, Christensen argued that Seckin "agreed to Alaska having jurisdiction when she registered the [Turkish] [j]udgment in Alaska and subsequently modified that custody judgment by way of stipulation and a Child Custody Jurisdiction Affidavit of the parties." He argued, based on AS 25.30.310,[6] that Alaska gained

---

[4]     AS 25.30.320(a)(1)-(2).

[5]     AS 25.30.810(a). AS 25.30.400-25.30.590 govern enforcement of custody decrees.

[6]     AS 25.30.310(a)(1)-(2) (granting Alaska court that has made a custody determination "exclusive, continuing jurisdiction over the determination" until it
(continued...)

exclusive, continuing jurisdiction when "the parties filed and the court adopt[ed] a custody modification stipulation on or about June 12, 2018."

The superior court disagreed and ruled that Alaska lacked jurisdiction to modify custody or support. Christensen moved for reconsideration, arguing that the court had jurisdiction based on its acceptance of the stipulated motion giving Seckin legal custody. Reconsideration was denied. Christensen appeals.

## III.   STANDARD OF REVIEW

Whether a superior court correctly determined that it lacked jurisdiction to modify a custody decree from a court in another country is a question of law that we review de novo.[7]

## IV.   DISCUSSION

Alaska has adopted the Uniform Child Custody Jurisdiction and Enforcement Act.[8] But Alaska did not adopt the uniform law's section addressing jurisdiction over custody orders from a foreign country; Alaska's version of the UCCJEA addresses only enforcement of such orders in its "International Application" section, AS 25.30.810.[9]

---

[6]      (...continued)
determines (1) "that neither the child [or] the child and one parent . . . have a significant connection with" Alaska or (2) "that neither the child, nor a parent. . . resides in this state").

[7]      *Mouritsen v. Mouritsen*, 459 P.3d 476, 479 (Alaska 2020).

[8]      AS 25.30.300-.910; *Atkins v. Vigil*, 59 P.3d 255, 257 (Alaska 2002); *see also Fox v. Grace*, 435 P.3d 883, 884 n.1 (Alaska 2018) ("Alaska has adopted and codified the UCCJEA in AS 25.30.300-.910.").

[9]      *Compare* AS 25.30.810(a) ("A court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying
(continued...)

Christensen asserts that we should nonetheless be guided by the UCCJEA to decide this case, and refers us to AS 25.30.810(a), which establishes the requirements to enforce a custody order from another country by treating it as if it were issued by a sister state. Because the Legislature did not adopt the relevant section of the UCCJEA, we do not decide whether an Alaska court should treat a foreign country "just as it would . . . a state of the United States," as Christensen urges. But even if we accepted his invitation, Christensen has failed to prove that the superior court erred when it denied his motion to modify the custody decree issued in his Turkish divorce.

The UCCJEA directs states to determine jurisdictional issues relating to custody orders by assigning children "home states."[10] The court in a child's home state has principal jurisdiction over custody matters.[11] Christensen claims that Alaska had become the child's home state by the time he filed his motion to modify in April 2019. In the alternative, he argues that Alaska had exclusive, continuing modification jurisdiction in April 2019 because of its approval of the June 2018 stipulation. Under either theory, he argues, the court had jurisdiction to decide the April 2019 motion. We consider each argument in turn.

---

[9] (...continued)
AS 25.30.400-25.30.590['s enforcement provisions]."), *with* UNIF. CHILD CUSTODY JURISDICTION & ENF'T ACT (UCCJEA) § 105(a), 9 U.L.A. Part 1A 488 (1997) ("A court of this state shall treat a foreign country as if it were a State of the United States for the purpose of applying [Articles] 1 [General Provisions] and 2 [Jurisdiction]." (first alteration in original)).

[10] *Atkins*, 59 P.3d at 257 (referencing AS 25.30.300).

[11] *Id.*

**A.**     **Christensen And Seckin's Stipulation Did Not Give Alaska Jurisdiction To Modify The Turkish Custody Order.**

Christensen asserts that Alaska was the child's home state and obtained jurisdiction in June 2018 when the superior court accepted his and Seckin's stipulated motion giving Seckin legal custody. He claims that because the Alaska court accepted the stipulation, jurisdiction "transferred" from Turkey to Alaska. As a result of this "transfer," Christensen argues that the Alaska court was able to, and did, "modify[]" the original Turkish order when it accepted the stipulation and had jurisdiction to modify it further when Christensen filed his motion to modify in April 2019. Christensen is incorrect.

An Alaska court may obtain jurisdiction over, and subsequently modify, the custody order of another state only by satisfying the requirements of AS 25.30.320.[12] Christensen and Seckin's stipulated motion did not ask the court to modify custody; it makes no mention of any existing order. The "stipulated motion" simply restated what the Turkish decree already provided: that Seckin had custody of the child. Neither Christensen nor Seckin indicated that the stipulation was intended to modify the Turkish order nor did they refer to AS 25.30.320's requirements; their stipulation could not vest

---

[12]     *See* AS 25.30.320(1)-(2) (requiring that court asked to modify another state's custody order have "jurisdiction to make an initial determination under AS 25.30.300(a)(1), (2), or (3)," and find that either: (1) the court of other state determined it no longer has exclusive continuing jurisdiction or Alaska court would be more convenient forum; or (2) neither the child nor a parent presently resides in other state).

the court with "the legal authority . . . to hear and decide" their case[13] when the law denies it.[14]

Christensen also failed to present any evidence that granting Seckin legal custody modified the Turkish order.  The only information Christensen provided to the superior court about Turkish family law was a printout from a blog post, which asserted Turkish law does not distinguish between sole and joint custody:  "In Turkish law there is only 'sole custody' . . . 'joint custody' does not exist."  Information from such a dubious source does not satisfy Christensen's burden to present evidence to support his motion.[15]  In any event, the blog post shows that the stipulation conformed to the Turkish order rather than modified it.  As a result, the superior court's acceptance of the stipulation appears to be part of its recognition and enforcement jurisdiction.[16]  The joint

---

[13]     *Richter v. Richter*, 330 P.3d 934, 937 (Alaska 2014) (discussing subject matter jurisdiction).

[14]     *Robertson v. Riplett*, 194 P.3d 382, 385 (Alaska 2008) ("Alaska Statute 25.30.320 . . . denies Alaska courts authority to modify child custody decrees of another state unless conditions specified in section .320 are met."); *see also Prickett v. Prickett*, 167 P.3d 661, 665 (Wyo. 2007) (affirming that parents' stipulation could not transfer jurisdiction over child custody proceedings from one state to another); *cf. Interiano-Lopez v. Tyson Fresh Meats, Inc.*, 883 N.W.2d 676, 687 (Neb. 2016) ("Parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent . . . .").

[15]     *See Maxwell v. Maxwell*, 37 P.3d 424, 426 (Alaska 2001) (noting that in a child custody modification proceeding the "moving parent bears the burden" of presenting evidence in support of his or her motion to justify modifying custody); *Ozaltin v. Ozaltin*, 708 F.3d 355, 370 (2d Cir. 2013) (relying on expert testimony to note that powers of Turkish court in divorce include power to remove custodial rights from one parent and give sole custody to the other).

[16]     *See* AS 25.30.450(b) (allowing Alaska court to "recognize and enforce" a registered child custody order).

stipulation did not transfer jurisdiction from Turkey to Alaska, and we are not persuaded that it modified the Turkish custody order.

**B.    The Alaska Court Did Not Have Jurisdiction To Modify The Turkish Order When Christensen Filed His Motion To Modify Custody.**

Because the stipulated custody motion did not transfer jurisdiction to Alaska in June 2018, we must consider whether the requirements of AS 25.30.320 were otherwise met in April 2019 so that the Alaska court could modify the Turkish court's custody order. Even when Alaska is a child's home state, it is only after satisfying AS 25.30.320(1) or (2) that an Alaska court can exercise jurisdiction to modify another state's custody order.[17] As the party seeking modification, Christensen "bears the burden" of presenting evidence in support of his motion to modify the Turkish order.[18]

Christensen has not met his burden. Even if Alaska was the child's home state in April 2019, as Christensen argues,[19] AS 25.30.320 would authorize an Alaska court to modify the Turkish order only if Turkey "determine[d] it no longer ha[d] exclusive, continuing jurisdiction" or concluded that Alaska "would be a more convenient

---

[17]    AS 25.30.320 (prohibiting Alaska court from modifying out-of-state decree unless Alaska has initial jurisdiction under AS 25.30.300(a)(1), (2), or (3) *and* either one of two conditions is met); *Robertson*, 194 P.3d at 385-86 (holding that Alaska lacked modification jurisdiction over Ohio decree even though Alaska was children's home state under UCCJEA).

[18]    *Maxwell*, 37 P.3d at 426.

[19]    We need not determine whether Alaska met the jurisdictional requirements of AS 25.30.300(a)(1), (2), or (3) because even if they were met, Christensen failed to satisfy AS 25.30.320(1) or (2).

forum,"[20] or if an Alaska or Turkish court found that "neither the child, nor [Seckin] . . . presently resides in [Turkey]."[21]

Christensen failed to present any evidence to the superior court that Turkey had made either determination set out in AS 25.30.320(1). Christensen also failed to prove that neither Seckin nor the child was residing in Turkey in April 2019. In fact Christensen admitted that Seckin had returned to Turkey with the child in January 2019, and it was undisputed that Seckin and the child were living in Turkey when he filed his motion to modify custody. Nor did he establish that the child's presence in Turkey was temporary. The standing master accordingly found that the child and Seckin were "living in Turkey," and that AS 25.30.320(2)'s requirement to modify jurisdiction was not met. Because the requirements of AS 25.30.320 were not met, the superior court correctly held that it lacked jurisdiction to modify the Turkish court custody determination.

**C.    Seckin's Filing Of Child Custody Jurisdiction Affidavits Did Not Confer Jurisdiction On The Superior Court.**

Christensen also argues that Seckin's filing of child custody jurisdiction affidavits "represented that the Palmer Superior Court had jurisdiction over the custody of the minor child." He is mistaken.

A parent may register a child custody determination from another state in Alaska[22] by lodging certain documents with the Alaska court.[23] One of the required

---

[20]    AS 25.30.320(1).

[21]    AS 25.30.320(2).

[22]    AS 25.30.430(a) ("A child custody determination issued by a court of another state may be registered in this state, with or without a simultaneous request for enforcement.").

[23]    AS 25.30.430(a)(1)-(3) (listing documents including letter requesting
(continued...)

documents is a child custody jurisdiction affidavit describing where and with whom the child has lived during the last five years.[24]

Seckin first filed an affidavit when she registered the Turkish court custody order. She filed a second affidavit when she and Christensen filed their joint stipulation granting her legal custody of the child. Contrary to Christensen's argument, neither of these affidavits "represented that the Palmer Superior Court had jurisdiction over the custody of" their child. Instead, the affidavits merely supplied the court with the information specified in AS 25.30.380 and required under AS 25.30.430(a)(1)-(3) to engage in the child custody proceeding before it.

## V.    CONCLUSION

The superior court's holding that it did not have jurisdiction to modify the Turkish court's custody determination is AFFIRMED.

---

[23]    (...continued)
registration, copies of determination to be registered, and names and addresses of person seeking registration and parent who has been awarded custody).

[24]    AS 25.30.380(a).