NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARIAN S., | ) | |
| | ) | Supreme Court No. S-14364 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-04-09362 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| PIERCE S., | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1436 - September 12, 2012 |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Peter A. Michalski, Judge.

Appearances: Marian S., pro se, Anchorage, Appellant. Pierce S., pro se, Anchorage, Appellee.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices.

1.      Marian and Pierce[1] were married in October 1987 and have two children together: Victoria, born in 1992, and Bradley, born in 1995. The parties, who lived in Kenai, separated in September 1999, and Pierce filed for divorce in February 2000. The parties were divorced in March 2003.

---

[*]      Entered under Alaska Appellate Rule 214.

[1]      We use pseudonyms to protect the family's privacy.

2.     At first, Marian moved with the children to Anchorage while Pierce stayed in Kenai; thus, she was awarded primary physical custody of both children and the two shared joint legal custody.  After Pierce moved to Anchorage in May 2004, he was granted joint physical and legal custody of the children.  In November 2006, the parties entered a custody stipulation giving Pierce full physical custody of Victoria, although she had to spend a minimum of one weekend at her mother's house every two weeks.  The parties continued to share custody of Bradley.  In March 2007, Pierce filed a motion to modify custody, requesting full legal custody in addition to the "unopposed physical custody previously granted" of Victoria and full legal and physical custody of Bradley.  This motion was denied in May 2007.  In January 2009, Pierce filed a motion to reduce his child support obligations.  In April, the superior court reduced child support in accordance with the custody arrangement under which Victoria lived full time with Pierce while Bradley split his time between both parents.

3.     In July 2010, Victoria turned 18 and the Child Support Services Division (CSSD) automatically removed her from the child support calculations, thereby reducing Pierce's monthly obligation from $291 to $209.  By this time, Victoria had moved out of Pierce's home and was living in Kenai with the family of her half-brother.  Victoria still had one year of high school left, and the parties disputed whether Pierce continued to support her financially.  The parties also disputed whether Victoria had a full-time job.  Both parties claimed that the other had "disowned" and ceased communication with Victoria.

4.     In August 2010, Marian filed a Motion to Modify Custody and Child Support to reflect the fact that Victoria was no longer living in Pierce's house.  In November 2010, the superior court issued an order granting the motion to modify custody of Bradley to reflect the 50/50 arrangement the parties had been following, but failed to address any change in child support.  Thus, Marian filed another Motion to

Modify Child Support, claiming Pierce's child support obligation for Bradley should be increased since he should no longer get credit for financially supporting Victoria.

5. In December 2010, an interim judge issued a Notice of Intent to Grant Child Support Modification, citing the lack of opposition from Pierce or CSSD and indicating the new amount would be effective as of December 1, 2010. This order gave Pierce 20 days to object. Marian opposed the intended modification, claiming that because her original motion to change child support was filed in August 2010, the effective date for such change should be September 1, 2010. Pierce filed an untimely reply to Marian's response to the motion to modify, claiming that there was no need for the child support to be modified because his income had not changed and Victoria was living with his son's family "at [his] pleasure." In reply, Marian repeated her prior arguments that Pierce should not receive credit for supporting Victoria because Victoria had moved out of his house and he no longer financially supported her.

6. In February 2011, the superior court issued an order denying Marian's Motion to Modify Child Support.

7. Marian moved to reconsider the court's order, pointing out inconsistencies between Pierce's claims and the evidence she submitted to the court. The court ordered Pierce to address the motion to reconsider and file an up-to-date child support guidelines affidavit. This order allowed Pierce until April 14, 2011, to respond and allotted one week for Marian to respond. Pierce filed his response on April 15, 2011, reiterating that he continued to financially support Victoria; he attached his proposed child support calculations. Marian filed two replies, attaching to one her own proposed child support calculations and exhibits, and in another objecting to Pierce's financial calculations. The superior court denied the motion to reconsider.

8. Marian now appeals. She alleges that (1) the superior court erred in denying her Motion to Modify Child Support because she demonstrated a material

change in circumstances due to the change in custody, CSSD's automatic reduction of the support amount, and the vast disparity between the parties' incomes; (2) the superior court's factual findings, or lack thereof, were clearly erroneous because the court ignored evidence indicating that Pierce was no longer financially supporting Victoria and that Pierce had erred in his child support calculations; and (3) her due process rights were violated by the unequal treatment she received from the superior court, including the court's acceptance of Pierce's late filings. Pierce argues that (1) no material change in circumstances had occurred because he still financially provided for Victoria, she was unmarried and pursuing a high school education, and she was living with his son as his "designee"; (2) the superior court's findings of fact were correct and Marian has not produced evidence to support any of her assertions, including that he no longer supports Victoria or that he erred in his child support calculations; and (3) he had valid reasons for his delayed filings and the court did not treat Marian unfairly.

9. We agree with Marian that a material change in circumstances has occurred; we therefore remand for the superior court to review the legal and factual issues in this case and make explicit factual findings. We decline to reach Marian's due process arguments.

10. A motion to modify child support is governed by AS 25.24.170, Alaska Civil Rule 90.3, and our precedent.[2] "When a party moves to increase a child support obligation, the burden lies upon the moving party to show by a preponderance of the evidence that there has been a 'material and substantial change' " in circumstances.[3] If no such showing is made, the court may deny the motion to modify

---

[2] *Williams v. Williams*, 252 P.3d 998, 1008 (Alaska 2011).

[3] *Id*. (quoting *Routh v. Andreassen*, 19 P.3d 593, 596 (Alaska 2001)).

without a hearing.[4]  A material change of circumstances is automatically "presumed where the support calculated is 15% greater or less than the existing support order."[5] "Both legal and factual changes may amount to a material change in circumstances."[6]

11.     The superior court concluded that "[o]f the two parties' arguments, the father's argument is the better one."  The superior court did not hold a hearing and this single sentence was the only reason given by the superior court as to why it dismissed Marian's motion to modify child support.

12.     Although the parties' incomes may not have substantially changed, Marian is correct that a change in income is not the only relevant fact under Alaska Civil Rule 90.3(h)(1).  That rule refers to a change in *circumstances*, which is presumed when the support calculated is 15% greater or less than the existing support order.[7]  CSSD's reduction changed Pierce's child support obligation from $291 to $209 per month, an approximate 28% decrease.  Moreover, the increase that Marian was requesting, from $209 to $1,038.35 per month, was much larger than a 15% increase.  Additionally, both legal and factual changes may warrant review of the existing order.[8]  There were several apparent factual changes, or at least factual disputes, that could justify a modification

---

[4]     *Id*. (citing *Acevedo v. Burley*, 944 P.2d 473, 475-76 (Alaska 1997)).

[5]     *Id*. (citing *Ward v. Urling*, 167 P.3d 48, 52 (Alaska 2007)); *see also* Alaska R. Civ. P. 90.3(h)(1).

[6]     *Ward*, 167 P.3d at 52-53 (citing *Rusenstrom v. Rusenstrom*, 981 P.2d 558, 563 (Alaska 1999)).

[7]     *Williams*, 252 P.3d at 1008; Alaska R. Civ. P. 90.3(h)(1) ("A material change of circumstances is presumed where the support order calculated is 15% greater or less than the existing support order.").

[8]     *Ward*, 167 P.3d at 52-53.

here, including whether Victoria still lived with Pierce or was being financially supported by him and whether it was proper to remove Victoria from the child support calculations before her 19th birthday while she was still attending high school. Because there were facts alleged that, if true, showed a material change, it was improper to deny the motion without a hearing.[9] Thus, we remand for the superior court to hold a hearing and review the legal and factual disputes raised in this case.

13. "A finding is clearly erroneous if it leaves us with a 'definite and firm conviction on the entire record that a mistake has been made.' "[10] The record is devoid of almost any factual findings by the superior court. The court stated simply:

> [Marian] complains that the court has erroneously picked December 2010 as the starting date for a proposed increase in child support paid to her. [Pierce] objects to the increase itself on the basis of his actual 100% support of [Victoria] as she completes high school.
> Of the two parties' arguments, the father's is the better one.

No other explicit findings were made by the court regarding the arguments or documents submitted by the parties.

14. We cannot discern whether the superior court's factual findings are clearly erroneous when the court has made no findings.[11] The superior court found that Pierce's argument was the better one, but did not state the basis for this conclusion. It

---

[9]    *See Williams*, 252 P.3d at 1008.

[10]   *Dunn v. Dunn*, 952 P.2d 268, 270 (Alaska 1998) (quoting *R.F. v. S.S.*, 928 P.2d 1194, 1196 n.2 (Alaska 1996)).

[11]   *Cf. Virgin v. Virgin*, 990 P.2d 1040, 1048 (Alaska 1999) (In the child custody context, "courts will not have erred when the substantive information expressed in the findings clearly indicates the steps that the trial court followed, and, therefore, provides an adequate basis for appellate review.") (internal quotation marks omitted).

is undisputed that Victoria no longer lives in Pierce's house. Marian presented evidence suggesting that Pierce no longer financially supports Victoria, and Pierce submitted no proof other than his own assertions that he financially supports Victoria. Pierce claims that Victoria is living with his son as his "designee," but no finding was made on this factual matter. If Pierce is correct, the CSSD reduction was erroneous as no modification should have occurred.[12] Either way, the court should have made findings on these factual matters.

15. Additionally, Marian's other allegations may have merit but were not sufficiently addressed by the superior court. For example, we note our concerns with the obvious problems in Pierce's child support calculations. Marian pointed out that in his child support calculations, Pierce allocated $18,879.97 to voluntary retirement contributions in 2010, approximately 20.9% of his stated gross wages for that year. Marian is correct that this amount must, under the rule, be capped at 7.5% of gross earnings.[13] Moreover, Pierce erroneously added the children's PFDs to Marian's income,[14] and there are outstanding factual disputes regarding his actual income.

16. Because we remand this case for reconsideration of the factual and legal issues raised, we decline to reach Marian's alleged due process violations.

---

**12** *See* AS 25.27.061 ("child support to be paid for the care of an unmarried 18-year-old child who is actively pursuing a high school diploma . . . while living as a dependent with a parent, guardian, or designee of the parent or guardian").

**13** *See* Alaska R. Civ. P. 90.3(a)(1)(B) ("voluntary contributions to a retirement or pension plan . . . may not exceed 7.5% of the parent's gross wages . . .").

**14** *See Clugston v. Langham*, 2005 WL 3006567 at *2 (Alaska 2005) ("The superior court correctly held that the children's permanent fund dividends . . . do not constitute parental income for purposes of the Rule 90.3 calculation.").